FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO
26 NOV 13 PM 4:31

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:26-cv-__________

CHRISTOPHER J. NOLAN,
*Plaintiff, proceeding pro se,*
v.
BOARD OF COUNTY COMMISSIONERS OF PITKIN COUNTY, COLORADO;
RICHARD Y. NEILEY III, Pitkin County Attorney, in his individual and official capacities;
RYAN L. SCHEIDT, Assistant Pitkin County Attorney, in his individual and official capacities;
SUZANNE WOLFF, Community Development Director, in her individual and official capacities;
CHAD ABRAHAM, Code Enforcement Officer, in his individual and official capacities;
GREG POSCHMAN, Pitkin County Commissioner, in his individual capacity;
JEFFREY WOODRUFF, Pitkin County Commissioner, in his individual capacity; and
KELLY MCNICHOLS KURY, former Pitkin County Commissioner, in her individual capacity,
*Defendants.*

# VERIFIED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, DECLARATORY JUDGMENT, AND EQUITABLE RELIEF

(JURY TRIAL DEMANDED)

Plaintiff Christopher J. Nolan, proceeding *pro se*, brings this civil rights and constitutional action pursuant to 42 U.S.C. § § 1983 and 1988, Title II of the Americans with Disabilities Act (42 U.S.C. § 12131 *et seq.*), and the Declaratory Judgment Act (28 U.S.C. § § 2201–2202), and alleges as follows:

## I. NATURE OF THE ACTION

1. This action arises from an ongoing, coordinated campaign of municipal retaliation, procedural due process deprivations, arbitrary "Class of One" regulatory discrimination, and physical exclusion from the seat of local government executed by Pitkin County officials under color of state law.

2. For over two years, Defendants have weaponized municipal code enforcement and extra-judicial administrative bans against Plaintiff. Commencing on October 31, 2024, Defendant County Attorney Richard Y. Neiley III issued an indefinite administrative directive barring Plaintiff beyond the foyer of the Pitkin County Administration Building (530 East Main Street, Aspen, CO). Defendant Neiley explicitly justified this exclusion as an administrative sanction arising from a purported and unresolved civil zoning dispute.

3. Defendants maintain this building lockout despite voluntarily dismissing their underlying civil zoning enforcement action (Pitkin County District Court Case No. 2026CV30008) on May 1, 2026. Furthermore, 530 East Main Street serves as the central seat of county governance and the primary Voter Service and Polling Center (VSPC) for in-person voting during the November 2024 election and the November 2026 election, which resulted in actual voter disenfranchisement in November 2026, and which maintains an unconstitutional prior restraint barring Plaintiff from ongoing civic proceedings.

4. While subjecting Plaintiff to building lockouts, unserved notices of violation, and recorded clouds on property title for parking a mobility access vehicle on a pre-existing roadway easement, Defendants concurrently granted arbitrary regulatory favoritism to adjacent private luxury landowners. During the time of the building lockout Defendants simultaneously authorized adjoining owners at 98 Snow Fox Lane (Sandstone Trust) to pour thousands of square feet of asphalt across the identical easement corridor under permit ACCESS.1979.2024, unilaterally waiving mandatory neighbor consent requirements.

5. On April 15, 2026, Defendant Assistant County Attorney Ryan L. Scheidt issued a formal administrative denial of Plaintiff's Title II Americans with Disabilities Act (ADA) accommodation request. In that denial, Defendant Scheidt critically admitted in writing that temporary parking on the parcel for mobility access is *not* a land-use code violation. Despite this formal admission, Defendants refused to expunge the clouded title or lift the administrative building ban.

6. Emboldened by Defendants' continuous public stigmatization of Plaintiff's property rights, private neighbors have escalated to physical violence, including an active vehicular assault and verbal threats of bodily injury on the shared driveway (Pitkin County Sheriff's Office Case No. 26P010952) (Exhibit 16).

7. Plaintiff initiates this action to secure emergency and permanent injunctive relief restoring unhindered physical access to public county facilities and polling centers, expunging retaliatory title encumbrances, enjoining arbitrary land-use enforcement, declaring secret litigation authorizations void *ab initio*, and recovering compensatory and punitive damages against the individual Defendants for willful constitutional deprivations.

## II. JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over Plaintiff's federal constitutional and statutory claims pursuant to 28 U.S.C. § § 1331 (federal question) and 1343(a)(3)-(4) (civil rights), as this action seeks redress for violations of the First, Fifth, and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983, and violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132.

8A. The Court possesses subject-matter jurisdiction to hear and grant equitable relief regarding ongoing municipal enforcement actions notwithstanding the pending state court proceeding in *Board of County Commissioners of Pitkin County v. Christopher J. Nolan, et al.* (Pitkin County District Court Case No. 2026CV30151). Pursuant to *Mitchum v. Foster*, 407 U.S. 225, 242-43 (1972), 42 U.S.C. § 1983 serves as an expressly authorized congressional exception to the Anti-Injunction Act (28 U.S.C. § 2283). Furthermore, abstention under *Younger v. Harris*, 401 U.S. 37 (1971), is inapplicable because Case No. 2026CV30151 was initiated *ultra vires*, in bad faith, without lawful statutory authority, and for the sole purpose of First Amendment retaliation and harassment following Defendants' binding written admission that Plaintiff's conduct does not constitute a code violation (*Younger*, 401 U.S. at 47-49; *Perez v. Ledesma*, 401 U.S. 82, 85 (1971); *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997)).

9. Declaratory and equitable relief are authorized by 28 U.S.C. § § 2201 and 2202, and Federal Rules of Civil Procedure 57 and 65.

10. The Court has supplemental jurisdiction over any related state-law property and administrative claims pursuant to 28 U.S.C. § 1367(a).

11. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), because all Defendants reside or conduct official duties within this judicial district, and all substantial events, transactions, and constitutional deprivations occurred in Pitkin County, Colorado.

## III. PARTIES AND STANDING

12. **Plaintiff Christopher J. Nolan** is a natural person and citizen of the United States of America. Plaintiff is a "qualified individual with a disability" under 42 U.S.C. § 12131, having survived a catastrophic motor vehicle collision resulting in nine fractured bones, a collapsed lung, intensive care treatment at Denver Health, and extensive rehabilitation at Craig Hospital. Plaintiff suffers from permanent mobility impairments and respiratory vulnerability requiring proximity parking, mobility apparatuses, and precautionary respiratory equipment. Plaintiff is the sole manager, registered agent, and beneficial occupant of real property located at 110 Snow Fox Lane, Aspen, Colorado 81611 (Lot 2A, Block 5, Brush Creek Village Subdivision, Filing 1; Parcel ID: 264328204005), vested in fee-simple title in Aspen Vibes LLC pursuant to a recorded Quit Claim Deed (Reception No. 658028) (Exhibit 1), which parcel Plaintiff occupies and maintains for apicultural stewardship purposes under the protections of the Colorado Right-to-Farm Act (C.R.S. § 35-3.5-101) and state agricultural preemption (C.R.S. § 30-28-111(1)). Plaintiff sues strictly in his individual capacity to vindicate his personal constitutional freedoms, statutory civil rights, and possessory property interests.

13. **Defendant Board of County Commissioners of Pitkin County, Colorado ("BOCC")** is the political subdivision and governing body of Pitkin County, maintaining administrative offices at 530 East Main Street, Aspen, Colorado 81611. The BOCC is the municipal entity responsible for countywide policies, executive session litigation directives, and the named beneficiary of certain local deed restrictions.

14. **Defendant Richard Y. Neiley III** is, and was at all times relevant, the County Attorney for Pitkin County (initially serving as Interim County Attorney), acting under color of state law. Defendant Neiley authored the October 31, 2024 building lockout letter, coordinated the enforcement directives that bypassed technical building officials, admitted to the secret executive session litigation vote, and maintained Plaintiff's physical exclusion from public facilities. Defendant Neiley is sued in his official capacity and his individual capacity.

15. **Defendant Ryan L. Scheidt** is an Assistant County Attorney for Pitkin County, acting under color of state law at all times relevant to his actions described herein. Defendant Scheidt acted as co-counsel prosecuting the state enforcement action and authored the April 15, 2026 administrative letter formally denying Plaintiff's Title II ADA accommodation and administrative stay. Defendant Scheidt is sued in his official capacity and his individual capacity.

16. **Defendant Suzanne Wolff** is, and was at all times relevant to the 2024–2025 enforcement actions, the Community Development Director for Pitkin County, acting under color of state law. Previously, in 2006, Defendant Wolff served as the assigned Senior Planner who reviewed the Tabackin/Akiyoshi Activity Envelope and Constrained Site TDR application for the Subject Property (Case No. P198-06; BOCC Resolution No. 136-2006, Reception No. 530998), acquiring actual, firsthand knowledge of the pre-existing gravel access corridor, existing infrastructure on Lot 2A, and the County's formal determination that the lot was legally "developable" prior to any TDR severance. Notwithstanding that actual knowledge, on October 27, 2025, Defendant Wolff personally executed and recorded Notice of Noncompliance #712816 (Case No. CE.1818.2024) against the Subject Property—relying on Officer Chad Abraham's warrantless physical entry and void Notices of Violation misaddressed to the non-existent entity "Aspen Vibes I LLC"—thereby freezing all building, driveway, and land-use permits under Pitkin County Land Use Code § 10-30-40 without prior notice or hearing. Defendant Wolff is sued in her official capacity and her individual capacity.

17. **Defendant Chad Abraham** is, and was at all times relevant, a Code Enforcement Officer for Pitkin County, acting under color of state law. Defendant Abraham issued charging notices to a non-existent corporate entity ("Aspen Vibes I LLC") without proper statutory notice or personal service. Defendant Abraham is sued in his official capacity and his individual capacity.

18. **Defendant Greg Poschman** is an elected Pitkin County Commissioner, acting under color of state law. Defendant Poschman resides in Brush Creek Village in immediate viewshed proximity to

the Subject Property. Defendant Poschman voted to authorize civil litigation against Plaintiff during an unrecorded executive session without disclosing his personal pecuniary and viewshed conflict of interest. Defendant Poschman is sued in his individual capacity.

19. **Defendant Jeffrey Woodruff** is an elected Pitkin County Commissioner, acting under color of state law. As representative of District 4 (encompassing the Brush Creek/Snowmass viewshed approach) and presiding Chair, Defendant Woodruff participated in the unrecorded July 2025 litigation authorization and ratified the administrative ban against Plaintiff. Defendant Woodruff is sued in his individual capacity.

20. **Defendant Kelly McNichols Kury** is a natural person and former Pitkin County Commissioner (serving through February 2026), currently residing in Montpelier, Vermont. Defendant Kury participated as Chair of the Pitkin County Board of County Commissioners in the unrecorded July 2025 executive session authorizing litigation and ratified the administrative building ban during her tenure in office. Defendant Kury is sued in her individual capacity.

## IV. FACTUAL ALLEGATIONS

### A. The Real Property, Pre-Existing Roadway, and the 2007 TDR Restriction

21. The Subject Property consists of a 2-acre parcel located at 110 Snow Fox Lane, Aspen, Colorado (Lot 2A, Block 5, Brush Creek Village Subdivision, Filing 1).

22. Due to the parcel's extreme topography—where 90% to 98% of the lot consists of steep slopes in excess of 30% to 45%—the sole traversable access corridor to the usable portions of the lot is a pre-existing 20-foot-wide common roadway easement connecting to Medicine Bow Road.

23. This physical roadway corridor was surveyed, excavated, and legally ratified under a recorded Ratification and Amendment of Easement Agreement dated July 16, 1997 (Reception No. 406409, Pitkin County Records) (Exhibit 6).

24. On November 1, 2006, the BOCC adopted Resolution No. 136-2006, granting two constrained site Transferable Development Rights (TDRs) to Plaintiff's predecessor in interest. In Finding 6.A of Resolution No. 136-2006, the County expressly admitted: *"98% of the lot is comprised of slopes in excess of 30%; 90% of the lot is comprised of slopes in excess of 45%. The only area containing slopes of less than 30% is contained within Snow Fox Lane."* (Exhibit 5).

25. Despite actual, visual knowledge of this pre-existing 20-foot roadway documented on the 2006 Schmueser Gordon Meyer Activity Envelope Plan reviewed by Defendant Wolff as Senior Planner, the County recorded a Deed Restriction on January 23, 2007 (Reception No. 533645) running *"for the benefit of Pitkin County, Colorado its successors and assigns."*

26. The 2007 Deed Restriction recited the false factual premise that "no development or improvements currently exist on the property" (Exhibit 5). The then-Board of County Commissioners in 2006 appears to have acted in good-faith reliance upon the administrative

representations presented by the Community Development Department that the parcel was raw and undeveloped. However, then Senior Planner and now Community Development Director Suzanne Wolff and planning staff possessed actual, documented visual knowledge of the pre-existing 1997 excavated roadway easement (Reception No. 406409) as explicitly depicted on the 2006 Schmueser Gordon Meyer Activity Envelope Plan reviewed by Defendant Wolff (Exhibit 5, Exhibit 6). Under Colorado contract and property law, this fundamental divergence between the physical reality of the land and the contractual recital created an incurable mutual mistake of factual baseline regarding a core condition precedent, rendering the 2007 TDR Deed Restriction procedurally defective and void *ab initio.*

27. Furthermore, under binding municipal precedent formally adopted in BOCC Resolution No. 047-2024 (Logsdon/Meserve), Pitkin County established that private road easements on AR-10 constrained parcels must be formally vacated prior to the issuance of a Constrained Site TDR—confirming that unvacated private road easements retain active vehicular access rights notwithstanding TDR severance (Exhibit 11). Defendants directly contradicted their own precedent when pursuing civil enforcement against Plaintiff in 2024 and 2025 by treating Lot 2A's unvacated, pre-existing 20-foot access easement (Reception No. 406409) as stripped of vehicular access and temporary mobility parking rights.

**B. Disparate Favoritism, Waived Neighbor Consent, and Unauthorized Paving**

28. On August 28, 2024, adjoining property owners at 98 Snow Fox Lane (Sandstone Trust / Stanley Erck, Parcel ID 264328204002) submitted Pitkin County Access Permit Application ACCESS.1979.2024 (Permit No. 1210.2024.DACC), representing that the proposed work was limited to paving *"that portion of Snow Fox Lane on the subject property [98 Snow Fox Lane] as well as the driveway of 98 Snow Fox Lane and to add guardrails at the ends of the driveway"* (Exhibit 8). Instead, the applicants' contractors poured 16,400 square feet of asphalt paving and installed 200 linear feet of metal guardrails extending beyond 98 Snow Fox Lane directly across Plaintiff's fee-simple boundary on Lot 2A without Plaintiff's consent (Exhibit 8).

29. Although Pitkin County Planning Engineer Josh Rice advised that his *"main concern was that the adjacent property owners were on board with the improvements,"* the applicant's August 28, 2024 formal notification dossier—compiled from the list of impacted neighbors *"The County requested to inform"* (911 Medicine Bow Road, 128 Snow Fox Lane, and 148 Tabula Rasa Road)—deliberately omitted Plaintiff and 110 Snow Fox Lane (Lot 2A), the fee-simple owner directly burdened by the paving, even though the dossier itself attached the recorded 1997 Ratification of Easement (Reception No. 406409) and 2021 Easement Agreement (Reception No. 677548) explicitly identifying Lot 2A (Aspen Vibes LLC) as a co-owner of the shared access corridor (Exhibit 8).

30. On January 28, 2025, Pitkin County Planning Engineer Josh Rice formally disapproved the Final Engineering Inspection for ACCESS.1979.2024 (Inspection Report No. 4215.2024.INSP) due to the unconsented encroachment onto Lot 2A, issuing the explicit written requirement: *"Provide letter from neighbor"* (Exhibit 8).

31. Just fifteen days later, on February 12, 2025, Defendant Wolff's department reversed course and approved the final engineering inspection, accepting a stamped engineer's drawing from contractor Kimley-Horn to unilaterally waive the neighbor consent requirement (Exhibit 8).

32. Demonstrating gross disparate treatment and an unconstitutional double standard, Pitkin County ignored both Plaintiff's September 23, 2024 complaint to Mac Benning (complete with geotagged photographs of a neighbor's contractor excavating Lot 2A with heavy machinery and disturbing boundary markers) and Plaintiff's subsequent formal SagesGov portal complaint filed on September 8, 2025 (Complaint No. COMP.2228.2025, assigned to Defendant Chad Abraham), which included survey overlays and photographs of metal boundary markers proving 98 Snow Fox Lane had placed permanent asphalt development directly upon Plaintiff's TDR-restricted Lot 2A (Exhibit 7; Exhibit 8). Pitkin County took zero enforcement action and recorded no title encumbrance against 98 Snow Fox Lane for placing permanent asphalt onto Lot 2A—yet on October 27, 2025, Defendants Wolff and Abraham recorded Notice of Noncompliance #712816 (Case No. CE.1818.2024) clouding Plaintiff's fee-simple title and freezing all permits on Lot 2A for alleged *"Unpermitted development on property from which the development right has been severed"*, even after Pitkin County had closed an earlier trailer investigation as *"Not Applicable"* on May 9, 2024 (Case No. CE.0835.2024) and after Chief Building Official Jeffrey Erickson Jr. confirmed in writing on January 24, 2025 that Plaintiff's portable items were merely a *"plastic portable baby gate"* constituting *"really a civil matter"* (Exhibit 4; Exhibit 9).

32A. Compounding this unconstitutional regulatory favoritism, adjoining landowner Stanley Erck / Sandstone Trust has actively weaponized Defendants' unilateral permit approvals to assert fabricated, extortionate financial claims against Plaintiff. Specifically, after Defendants waived mandatory neighbor consent under ACCESS.1979.2024 to facilitate private asphalt construction across Plaintiff's fee-simple parcel without compliance with the majority-consent requirements of the 1997 Easement Agreement (Reception No. 406409), Erck's representative transmitted an invoice demanding that Plaintiff pay for one third of the cost of the unpermitted paving, alongside ongoing threats for expenses related to third party "clearing" of Plaintiff's parcel, which Plaintiff has not authorized. Defendants' disparate enforcement, clouded title, and administrative building bans have actively created a coercive environment where private neighbors believe they can unilaterally alter Plaintiff's land and demand financial indemnification for unpermitted construction that Defendants selectively refuse to regulate.

32B. The regulatory favoritism granted under permit ACCESS.1979.2024 is further tainted by an irreconcilable title contradiction. While Lot 2A (110 Snow Fox Lane) and adjoining Lot 1A (128 Snow Fox Lane) hold pre-existing, senior reciprocal access easements dating to 1978 and 1997 (Reception No. 406409), the developing party at 98 Snow Fox Lane (Sandstone Trust) holds no senior access easement across Lot 2A. Notwithstanding the complete absence of senior easement rights, Defendants arbitrarily authorized Sandstone Trust to excavate, pour permanent asphalt, and construct guardrails encroaching directly across Plaintiff's fee-simple parcel, while concurrently claiming that the 2007 TDR Deed Restriction (Reception No. 533645) strictly strips Lot 2A of all right to support roadway development, clearing, or access.

32C. Defendants have placed Plaintiff in an unconstitutional regulatory Catch-22:

(a) If the pre-existing 20-foot excavated roadway is recognized as a lawful access facility, Plaintiff's parking and ADA mobility access are lawful per se, rendering Defendants' NOVs, clouded title, and building bans bad-faith retaliation under the First Amendment and Title II of the ADA; or

(b) If Defendants' absolutist assertion is upheld—that the 2007 TDR Restriction strictly prohibits all roadway use, clearing, or physical presence under Land Use Code Chapter 11—then the 2007 Restriction was void *ab initio* for mutual mistake and constitutes an unlawful attempt to extinguish senior recorded easements without eminent domain (violating Pitkin County BOCC Resolution 047-2024), and Defendants' selective authorization of Sandstone Trust's asphalt paving across the identical restricted corridor constitutes an intentional, arbitrary, and irrational violation of the Fourteenth Amendment Equal Protection Clause (Village of Willowbrook v. Olech).

C. Due Process Deprivations, Phantom Notices, and Clouded Title

33. While facilitating Sandstone Trust's massive unpermitted asphalt construction on the shared roadway, Defendants concurrently prosecuted Plaintiff for merely parking an access vehicle on the same roadway corridor.

34. On September 24, 2024, Defendant Chad Abraham issued a Notice of Violation (CE.1818.2024) formally addressed and mailed to a legally non-existent corporate entity: *"Aspen Vibes I LLC"* (Exhibit 3).

35. On October 24, 2024, Defendant Abraham issued a Second and Final Notice of Violation, again addressed exclusively to the phantom entity *"Aspen Vibes I LLC"* (Exhibit 3). Neither document contained an inked signature.

35A. When Pitkin County Interim County Attorney Richard Y. Neiley III transmitted his administrative building ban directive (dated October 31, 2024) by email on October 31, 2024—purporting to justify barring Plaintiff from County offices based upon the pending code enforcement matter—Neiley attached to that very same email copies of both the September 24,

2024 Notice of Violation and the October 24, 2024 Second and Final Notice of Violation, confirming his firsthand knowledge that the underlying enforcement action had been initiated solely through void charging notices addressed to the phantom entity *"Aspen Vibes I LLC"* rather than the record landowner (Exhibit 2; Exhibit 3).

36. On October 27, 2025, Defendant Suzanne Wolff executed and recorded Notice of Noncompliance #712816 (Case No. CE.1818.2024) against 110 Snow Fox Lane in the public records of Pitkin County without prior notice, personal service, or an administrative hearing—predicating that recorded encumbrance solely upon the two void 2024 Notices of Violation that had been defectively addressed and mailed to the phantom entity *"Aspen Vibes I LLC,"* even though Notice #712816 itself identified the true record owner as *"Aspen Vibes LLC"* without Defendants ever having issued or served a valid charging notice upon Aspen Vibes LLC or Plaintiff (Exhibit 3; Exhibit 4).

37. Pursuant to Pitkin County Land Use Code § 10-30-40, recording Notice #712816 on the basis of those unserved, jurisdictionally defective charging notices triggered an automatic administrative freeze withholding all land-use approvals, building permits, or development reviews until County agents verify *"correction,"* destroying the marketability and beneficial use of Plaintiff's fee-simple property without due process of law (Exhibit 4).

**D. The Retaliatory Building Ban Directive and Armed Security Interception**

38. On October 31, 2024, Defendant County Attorney Richard Y. Neiley III issued a formal letter to Plaintiff barring him from entering the Pitkin County Administration Building beyond the public foyer without advance written permission confirmed by Neiley (Exhibit 2).

39. Defendant Neiley explicitly tied this permanent physical exclusion and communication gag to a purported land-use enforcement matter initiated solely through the September 24, 2024 Notice of Violation and October 24, 2024 Second and Final Notice of Violation—each of which was defectively addressed to *"Aspen Vibes I LLC,"* a phantom entity with which Plaintiff has no affiliation, rendering the underlying enforcement proceeding void *ab initio*—stating: *"because this matter has been turned over to the County Attorney's Office, please refrain from contacting or communicating with anyone in the Pitkin County Community Development Office or other staff... You will not be permitted to access the Pitkin County Administration Building beyond the foyer without an appointment to do so, confirmed in writing by me"* (Exhibit 2; Exhibit 3). Even while barring Plaintiff from entering Community Development or communicating with staff, Defendants Wolff and Abraham continued actively prosecuting Case No. CE.1818.2024 and encumbering Plaintiff's title behind closed doors, and Defendant Neiley's physical building ban remains in full force and effect against Plaintiff as of the filing of this Complaint.

40. Defendant Neiley provided no notice of any behavioral or security infraction, no pre- or post-deprivation administrative hearing, no right of appeal, and no expiration date for this perpetual exclusion, which was predicated solely upon the September 24, 2024 Notice of

Violation and October 24, 2024 Second and Final Notice of Violation—each defectively addressed to the phantom entity *"Aspen Vibes I LLC"* (Exhibit 2; Exhibit 3).

41. On January 24, 2025, Pitkin County Chief Building Official Jeffrey Erickson inspected 110 Snow Fox Lane and officially informed staff that the portable gate was an unregulable "civil matter." On January 28, 2025, CBO Erickson instructed staff to delete the draft citation from the system, and Permit Technician Bonnie Shiles deleted the NOV from the SagesGov public docket to conceal the administrative defect (Exhibit 9).

42. Defendants actively enforced this physical ban in a manner that rendered the purported "public meeting" exception in Defendant Neiley's October 31, 2024 letter illusory in practice (Exhibit 2). Earlier in 2026, when Plaintiff entered 530 East Main Street solely to pay his property taxes at the County Tax Office, an armed private security guard physically shadowed Plaintiff through the building. On September 8, 2026, that same armed security guard intercepted Plaintiff in the ground-floor foyer during a scheduled BOCC public meeting, interrogated him, and detained him outside until the public comment period had completely passed—permitting Plaintiff inside the boardroom only after his First Amendment opportunity to address the Board in that public forum had been extinguished, while continuing to trail his movements and inflicting severe emotional distress and public humiliation.

**E. Secret Executive Session Litigation Authorization (C.R.S. § 24-6-402(8))**

43. On July 21, 2025, Defendant Neiley admitted in an email to Defendant Abraham: *"The next step for Snow Fox is for me to file a lawsuit. The BOCC just authorized me to do so last week."* (Exhibit 10).

44. Published BOCC agendas and minutes for the week of July 14–18, 2025, confirm that no public discussion, notice, or public roll-call vote to authorize litigation against Plaintiff ever occurred.

45. Official BOCC Work Session records for Tuesday, July 15, 2025, explicitly record: *"Commissioner Clapper not attending. Commissioner Jacober not attending."*

46. The litigation authorization was executed in an unrecorded, secret executive session by a bare three-member quorum consisting of Commissioners Kury, Woodruff, and Poschman.

47. Under the Colorado Open Meetings Law (C.R.S. § 24-6-402(8)) and binding Colorado Supreme Court precedent (Hanover School District No. 28 v. Barbour, 171 P.3d 223, 228 (Colo. 2007); Gavend v. City of Thornton, 165 Colo. 182, 186, 437 P.2d 778, 780 (1968)), local governing bodies are strictly prohibited from making formal decisions or authorizing legal proceedings in executive sessions. The authorization was ultra vires and legally void.

48. Defendant Commissioner Greg Poschman resided in Brush Creek Village in immediate viewshed proximity to 110 Snow Fox Lane. Defendant Poschman voted to authorize the litigation to protect his personal residential viewshed and elevate his private property value, violating

Fourteenth Amendment due process guarantees of an impartial tribunal and Colorado conflict-of-interest statutes (C.R.S. § 24-18-109).

**F. ADA Title II Request and the Formal Administrative Admission**

49. On April 13, 2026, Plaintiff served a formal Request for Reasonable Modification under Title II of the ADA upon the BOCC, Neiley, Scheidt, and Wolff, putting Defendants on notice of his documented mobility disabilities and requesting parking accommodations and walking path access (Exhibit 12).

50. On April 15, 2026, Defendant Ryan L. Scheidt formally denied Plaintiff's accommodation request and refused an administrative stay (Exhibit 13). In that denial, Defendant Scheidt made a binding written admission on behalf of the County:

*"The County does not contend that temporary parking on the Property for purposes of lawful access, including parking reasonably necessary to access the Property with your mobility apparatus and precautionary support equipment, constitutes a land use code violation."* (Exhibit 13).

50A. Having formally conceded that parking is not a violation of the Land Use Code, Defendants' continued maintenance of Notice of Noncompliance #712816 and building bans based upon alleged parking violations constitutes intentional, bad-faith discrimination and retaliation under 28 C.F.R. § 35.134.

**G. Dismissal of State Court Litigation and Ongoing Retaliation**

51. On January 15, 2026, Defendants Neiley and Scheidt initiated civil enforcement litigation in Pitkin County District Court (Case No. 2026CV30008), attaching the defective NOVs addressed to *"Aspen Vibes I LLC"* as charging exhibits.

52. On March 27, 2026, Plaintiff filed a Special Appearance and Motion to Quash Service of Process, exposing that Co-Defendant Sheriff Michael Buglione's deputies attempted service in direct violation of C.R.S. § 30-10-605 (which mandates service by the County Coroner when the Sheriff is a party) and that the mandatory 63-day service window under C.R.C.P. 4(m) had permanently expired.

53. On May 1, 2026, Defendants filed a Notice of Voluntary Dismissal Without Prejudice in Case No. 2026CV30008.

54. Despite voluntarily terminating the litigation, Defendants actively maintained the October 31, 2024 building ban, proving that the exclusion was never a legitimate trial management protocol, but a continuing unconstitutional prior restraint designed to punish Plaintiff for exercising his civil rights.

55A. On October 12, 2026—just nineteen (19) days after Plaintiff served his September 23, 2026 Master Cease & Desist Demand—adverse counsel Defendants Richard Y. Neiley III and Ryan L. Scheidt renewed their bad-faith prosecution by re-filing the previously dismissed civil zoning

action in Pitkin County District Court, Division 6, under Case No. 2026CV30151 (Exhibit 17). Following an Order of Reassignment Upon Disqualification entered on October 21, 2026, Defendants moved for forthwith disposition and secured an expedited "Statutory Preliminary Hearing" pursuant to C.R.S. § § 30-28-124(2) and 30-28-124.5 set for November 23, 2026, at 1:00 p.m. in Room 6 of the Pitkin County Courthouse, recycling the exact same defective September and October 2024 Notices of Violation addressed to non-existent entity "Aspen Vibes I LLC" as charging exhibits (Exhibit 17). Moreover, on November 9, 2026, Defendants filed purported Returns of Service in Case No. 2026CV30151 despite never accomplishing personal service upon Plaintiff under C.R.C.P. 4(e), creating an immediate threat that Defendants will seek a summary injunction on November 23, 2026, absent personal jurisdiction (Exhibit 17).

55B. The re-initiation of Case No. 2026CV30151 is ultra vires and void ab initio. Under C.R.S. § 24-6-402(8) and binding Colorado Supreme Court precedent (Hanover School District No. 28 v. Barbour, 171 P.3d 223, 228 (Colo. 2007); Bagby v. School District No. 1, 186 Colo. 428, 432, 528 P.2d 1299, 1301 (1974); Gavend v. City of Thornton, 165 Colo. 182, 186, 437 P.2d 778, 780 (1968)), a local governing body possesses no legal authority to initiate civil enforcement litigation absent a formal, recorded roll-call vote at an open, publicly noticed meeting. Published BOCC meeting records, public agendas, and approved minutes from May 1, 2026, through November 2026 confirm that no public agenda item, resolution, or roll-call vote authorizing Case No. 2026CV30151 ever occurred. Defendants Neiley and Scheidt filed Case No. 2026CV30151 without statutory authorization from the governing board.

55C. The renewed state prosecution constitutes bad-faith litigation and an abuse of administrative process. On April 15, 2026, Defendant Scheidt officially conceded in writing on behalf of Pitkin County: *"The County does not contend that temporary parking on the Property for purposes of lawful access, including parking reasonably necessary to access the Property with your mobility apparatus and precautionary support equipment, constitutes a land use code violation."* (Exhibit 13). Re-filing an identical civil enforcement action seeking punitive mandatory injunctions over conduct the County formally admitted is not a land-use violation constitutes a bad-faith prosecution brought with no reasonable expectation of obtaining a valid, non-preempted judgment on the merits.

55D. Defendants initiated Case No. 2026CV30151 with unconstitutional retaliatory intent, in direct temporal proximity to Plaintiff serving his September 23, 2026 Master Cease & Desist Demand placing the BOCC on formal notice of civil rights, Title II ADA, and federal regulatory noncompliance (Exhibit 15). Demonstrating further coercive harassment, Defendants Scheidt and Neiley are attempting to compel Plaintiff's physical appearance in Aspen on November 23, 2026, while concurrently maintaining Defendant Neiley's October 31, 2024 administrative directive

physically barring Plaintiff beyond the foyer of county administrative facilities under threat of armed security intervention (Exhibit 2).

55E. Further demonstrating an ongoing, systemic deprivation of core First Amendment rights, Defendants are actively enforcing Plaintiff's physical exclusion from 530 East Main Street during the BOCC Regular Meeting scheduled for Wednesday, November 18, 2026, and the legislative consideration and formal second reading of proposed amendments to the Pitkin County Comprehensive Plan and Land Use Code, officially scheduled for public hearing on Wednesday, December 2, 2026, at 12:00 p.m. MST in the BOCC Meeting Room. Under Colorado law and county charter, this second reading constitutes the final statutory public hearing prior to permanent legislative enactment. Defendant Neiley's October 31, 2024 foyer ban excludes Plaintiff from entering the hearing room, delivering in-person testimony, submitting evidentiary objections, and petitioning elected officials prior to the vote, while deploying Case No. 2026CV30151 as a pretextual impediment to disqualify Plaintiff from the public forum (*Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018)).

55F. Plaintiff has engaged in continuous, personal apicultural stewardship and pollinator land care on the Subject Property since the summer of 2024. Despite actual knowledge of these continuous agricultural activities—which are expressly protected from local zoning interference pursuant to state preemption under C.R.S. § 30-28-111(1)—Defendants have persistently acted in defiance of statutory preemption by prosecuting Plaintiff for utilizing the temporary, federally protected ADA mobility apparatuses necessary to conduct said stewardship. Concurrently, Defendants demonstrated gross disparate treatment by actively waiving mandatory neighbor consent rules to permit adjoining private landowners to pour permanent asphalt and construct guardrails across the exact same restricted parcel.

**H. Imminent Irreparable Harm: Election Week Lockout and Driveway Danger**

56. The Pitkin County Administration Building at 530 East Main Street houses the designated Voter Service and Polling Center (VSPC) for in-person voting, voter registration, and ballot resolution during the November 2026 election.

57. Defendant Neiley's unrescinded October 31, 2024 building ban physically bars Plaintiff beyond the foyer without prior written permission from adverse county legal counsel, inflicting actual disenfranchisement during the November 2026 election and imposing an ongoing prior restraint that suppresses Plaintiff's First Amendment rights to attend legislative proceedings, deliver public comment, and access all future elections administered at 530 East Main Street.

58. In addition, Defendants' public stigmatization of Plaintiff's parcel emboldened private neighbors to engage in vigilante harassment. Adjoining owner Stanley Erck (98 Snow Fox Lane) accelerated an off-road utility vehicle directly at Plaintiff on the shared driveway while an

occupant screamed, *"Yeah we are going to run you over!"*, forcing an emergency dispatch of the Pitkin County Sheriff's Office under Case No. 26P010952 (Exhibit 16).

59. Plaintiff faces an acute, clear, and present danger to personal safety and ongoing deprivations of fundamental constitutional rights that cannot be remedied by post-hoc monetary damages.

## V. CAUSES OF ACTION

### COUNT I

**First Amendment Retaliation (42 U.S.C. § 1983)**

*(Against Defendants Neiley, Scheidt, Wolff, Abraham, Woodruff, Poschman, and Kury in their Individual Capacities, and Pitkin County BOCC)*

60. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

61. Plaintiff engaged in speech, petitioning, and journalistic reporting protected by the First Amendment, including filing zoning complaints, submitting Colorado Open Records Act (CORA) requests, requesting ADA accommodations, contesting unconstitutional administrative actions, and serving a comprehensive Master Cease & Desist Demand upon the BOCC on September 23, 2026 (Exhibit 15).

62. Defendants took adverse retaliatory actions against Plaintiff that would chill a person of ordinary firmness from continuing to exercise protected First Amendment rights, including:

(a.) Issuing and maintaining an extra-judicial administrative directive barring Plaintiff from county administrative facilities beyond the foyer;

(b.) Deploying armed private security to physically intercept, detain, and shadow Plaintiff inside public meetings;

(c.) Authorizing civil litigation in secret executive sessions without statutory authority;

(d.) Imposing retaliatory fee barriers ($4,137) to stonewall public records requests concerning County Attorney conflicts (Exhibit 14); and

(e.) Re-filing an *ultra vires*, unauthorized state court civil enforcement lawsuit (Case No. 2026CV30151) and securing an expedited hearing date in direct temporal retaliation for Plaintiff's September 23, 2026 Master Cease & Desist Demand, despite formally admitting in writing that Plaintiff's parking does not violate the land use code.

63. Defendant Neiley's October 31, 2024 letter provides direct documentary proof of retaliatory causation, explicitly conditioning Plaintiff's physical exclusion upon his refusal to surrender his land-use defenses.

64. Individual Defendants Neiley, Scheidt, Wolff, Abraham, Woodruff, Poschman, and Kury acted with subjective malice, reckless indifference, evil motive, and willful and wanton disregard of Plaintiff's clearly established constitutional rights pursuant to *Smith v. Wade*, 461 U.S. 30 (1983)

and C.R.S. § 24-10-118(2)(a). Said Defendants possessed actual written knowledge from their own Chief Building Official and legal counsel that Plaintiff's conduct violated no lawful code, yet weaponized physical lockouts, secret votes, and retaliatory state court filings to punish protected petitioning, stripping them of qualified immunity and entitling Plaintiff to exemplary and punitive damages against each individual Defendant in their personal capacities.

COUNT II

**Fourteenth Amendment Procedural Due Process (42 U.S.C. § 1983)**

*(Against Defendants Wolff, Abraham, Neiley, Scheidt, Woodruff, Poschman, and Kury in their Individual Capacities, and Pitkin County BOCC)*

65. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

66. The Due Process Clause of the Fourteenth Amendment guarantees that no state actor shall deprive an individual of protected liberty or property interests without notice, a fair opportunity to be heard, and an impartial tribunal (*Mullane*; *Mathews v. Eldridge*).

67. Plaintiff possesses constitutionally protected liberty interests in accessing public government buildings, public meetings, and polling centers, as well as protected property interests in the unclouded title and lawful use of the Subject Property.

68. Defendants deprived Plaintiff of these protected interests without due process of law by:

(a.) Imposing an indefinite building lockout with zero notice, no administrative hearing, no right of appeal, and no statutory authority;

(b.) Issuing administrative charging notices addressed exclusively to a nonexistent corporate entity ("Aspen Vibes I LLC"), depriving the true record owner of lawful notice;

(c.) Recording Notice of Noncompliance #712816 to cloud title and freeze all development permits under Land Use Code § 10-30-40 without offering an administrative hearing or appeal; and

(d.) Authorizing civil litigation during an unrecorded, secret executive session tainted by Commissioner Poschman's undisclosed pecuniary conflict of interest.

68A. Pleading strictly in the alternative pursuant to Fed. R. Civ. P. 8(d)(2), to the extent any Defendant's deprivation of Plaintiff's procedural due process rights is determined not to have been willful, wanton, or malicious, said acts and omissions constituted negligent errors, misstatements, and neglect of official duty committed within the scope of their public offices.

COUNT III

**Fourteenth Amendment Equal Protection - "Class of One" (42 U.S.C. § 1983)**

*(Against Defendants Wolff, Neiley, Scheidt, Abraham, Woodruff, and Poschman in their Individual Capacities, and Pitkin County BOCC)*

69. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

70. Under *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), and *Kansas Penn Gaming v. Collins*, 656 F.3d 1210 (10th Cir. 2011), the Equal Protection Clause protects an individual against intentional, disparate treatment that lacks any rational basis.

71. Plaintiff is similarly situated in all relevant respects to adjoining property owners sharing the identical Snow Fox Lane roadway easement corridor.

72. Defendants intentionally singled out Plaintiff for hostile, punitive, and discriminatory treatment while granting unprecedented favors to similarly situated neighbors without a rational basis:

(a.) *Sandstone Trust (98 Snow Fox Lane):* Defendants fast-tracked and approved an application to pave 16,400 square feet of asphalt and construct metal guardrails across the shared easement corridor on Lot 2A, unilaterally overriding the planning engineer's inspection disapproval and waiving the neighbor consent requirement (ACCESS.1979.2024); and

(b.) *Plaintiff (110 Snow Fox Lane):* Defendants cited Plaintiff, threatened daily fines, recorded a cloud on title, and imposed building bans for parking an access vehicle on the exact same roadway corridor.

73. There is no rational governmental basis for deeming a shared corridor an authorized driveway for one neighbor to pave, but a barred "undeveloped zone" when an adjoining owner parks an access vehicle on it. This disparate enforcement was driven by vindictiveness, animus, and private self-enrichment.

COUNT IV

**Violation of Title II of the Americans with Disabilities Act (42 U.S.C. § 12132) & 28 C.F.R. § 35.134**

*(Against Defendant Board of County Commissioners of Pitkin County, and Neiley, Scheidt, and Wolff in their Official Capacities)*

74. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

75. Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(2), suffering from severe, permanent physical mobility impairments resulting from catastrophic accident trauma.

76. Defendant Pitkin County is a public entity subject to Title II of the ADA.

77. Defendant Pitkin County discriminated against Plaintiff by excluding him from participation in, and denying him the benefits of, county services, programs, and public civic facilities:

(a.) Confining Plaintiff to a ground-floor foyer, denying equal architectural and physical access to administrative divisions, public counters, and the active Voter Service and Polling Center;

(b.) Formally denying Plaintiff's April 13, 2026 request for reasonable modifications necessary to safely access his property, despite conceding that temporary parking is legal; and

(c.) Refusing an administrative stay and failing to engage in the federally mandated interactive process.

78. Defendants violated 28 C.F.R. § 35.134 by retaliating, coercing, and intimidating Plaintiff for asserting ADA rights, specifically deploying armed security personnel on September 8, 2026, to intercept and trail Plaintiff inside public county buildings following his disability petition.

79. Defendant Pitkin County acted with deliberate indifference to Plaintiff's federally protected rights, entitling Plaintiff to compensatory damages and equitable relief.

COUNT V

**Fifth Amendment Inverse Condemnation & *Monell* Municipal Liability (42 U.S.C. § 1983)**

*(Against Defendant Board of County Commissioners of Pitkin County)*

80. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

81. By recording Notice of Noncompliance #712816—which automatically freezes all permit and development rights under Land Use Code § 10-30-40—based upon unserved citations to a non-existent corporate entity, and by unilaterally authorizing neighboring landowners to pour permanent asphalt across Plaintiff's fee-simple land without compensation, Defendant Pitkin County executed an unconstitutional regulatory and physical taking of property in violation of the Fifth and Fourteenth Amendments. Under *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), Plaintiff is entitled to immediate federal relief without exhausting state-court procedures.

82. Pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), Defendant Pitkin County is directly liable for the constitutional deprivations inflicted upon Plaintiff.

83. The constitutional violations complained of were committed pursuant to official municipal policies, customs, and decisions of final county policymakers, including:

(a.) The custom of issuing extra-judicial administrative building bans to exclude disfavored citizens from government facilities without due process;

(b.) The custom of authorizing civil litigation in secret, unrecorded executive sessions in violation of C.R.S. § 24-6-402(8);

(c.) The policy of using land-use code enforcement as a weapon to protect proprietary deed restrictions running to the County's own benefit; and

(d.) The deliberate failure to train, supervise, and discipline county attorneys and code enforcement personnel regarding First Amendment retaliation, ADA non-discrimination, and procedural due process constraints.

84. These official municipal policies, customs, and practices were the moving force and direct proximate cause of the violation of Plaintiff's constitutional rights.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Christopher J. Nolan respectfully requests that this Court enter judgment in his favor and against Defendants, granting the following relief:

A. **Emergency and Preliminary Injunctive Relief:** Issue an immediate Temporary Restraining Order and Preliminary Injunction pursuant to Fed. R. Civ. P. 65:

1. Enjoining Defendants, their officers, agents, employees, and contract security personnel from enforcing Richard Y. Neiley III's October 31, 2024 administrative directive or any other restriction barring Plaintiff from the Pitkin County Administration Building (530 East Main Street, Aspen, CO);

2. Ordering Defendants to provide Plaintiff immediate, unhindered, and equal physical access to all public areas of 530 East Main Street, including the public counters, meeting chambers, and the active Voter Service and Polling Center (VSPC) and all future elections administered at 530 East Main Street;

3. Enjoining Defendants from enforcing, asserting, or citing Notice of Noncompliance #712816 (recorded October 27, 2025 at Reception No. 712816), and staying all administrative permit withholding against the Subject Property under Land Use Code § 10-30-40;

4. Enjoining Defendants from enforcing the 2007 TDR Deed Restriction (Reception No. 533645) or citing the Land Use Code against Plaintiff for parking, maneuvering, or accessing his vehicle, mobility apparatus, or respiratory support equipment on the shared driveway/access corridor of 110 Snow Fox Lane;

5. Restraining Defendants and county security personnel from intercepting, detaining, interrogating, shadowing, or harassing Plaintiff while he is peacefully present on public property, specifically including attending the BOCC Regular Meeting scheduled for Wednesday, November 18, 2026, and the scheduled second reading and public hearing of the Pitkin County Comprehensive Plan on Wednesday, December 2, 2026, at 12:00 p.m. MST, and exercising all First Amendment rights of assembly, petition, and public comment during open BOCC meetings and legislative hearings, and accessing all future elections administered at 530 East Main Street; and

6. Temporarily and preliminarily ENJOINING Defendants Board of County Commissioners of Pitkin County, Richard Y. Neiley III, and Ryan L. Scheidt, along with their agents, employees, and all persons acting in active concert with them, from prosecuting, advancing, maintaining, or seeking any hearing or preliminary injunction in Pitkin County District Court Case No. 2026CV30151 pending final disposition of this action, pursuant to 42 U.S.C. § 1983, Fed. R. Civ. P. 65, and the bad-faith exception to Younger v. Harris, 401 U.S. 37 (1971).

B. **Permanent Injunctive Relief:** Enter a permanent injunction enjoining Defendants from continuing their retaliatory building lockout, unlawful code enforcement, and programmatic ADA

exclusions. ORDERING that a certified copy of this Order may be recorded directly with the Pitkin County Clerk and Recorder, and upon recording, shall operate as a full, immediate, and permanent legal cancellation, expungement, and release of Notice of Noncompliance Reception No. 712816, without requiring further execution by County officials.

C. **Declaratory Judgment**: Enter a Declaratory Judgment pursuant to 28 U.S.C. § 2201 declaring that:

1. The October 31, 2024 administrative building ban violates the First and Fourteenth Amendments to the U.S. Constitution and Title II of the ADA;
2. The BOCC's secret July 2025 executive session authorization of civil litigation violated C.R.S. § 24-6-402(8) and rendered the resulting proceedings *ultra vires* and void *ab initio*;
3. Notice of Noncompliance #712816 is procedurally void *ab initio* and must be expunged from the public records of Pitkin County; and
4. The 2007 TDR Deed Restriction (Reception No. 533645) executed for the benefit of Pitkin County was based upon an incurable mutual mistake of fact. To the extent Defendants interpret and enforce said Restriction as prohibiting physical access, maintenance, or parking upon the pre-existing recorded roadway senior access easements appurtenant to Lot 2A (110 Snow Fox Lane) and Lot 1A (128 Snow Fox Lane), said Restriction is void, unconstitutional, and legally unenforceable against said roadway corridor.

D. **Compensatory Damages**: Award Plaintiff actual and compensatory damages against all Defendants, jointly and severally, in an amount to be determined at trial, for economic loss, clouded title, reputational injury, and severe emotional distress.

E. **Exemplary and Punitive Damages**: Award Plaintiff substantial punitive and exemplary damages personally against Defendants Richard Y. Neiley III, Ryan L. Scheidt, Suzanne Wolff, Chad Abraham, Greg Poschman, Jeffrey Woodruff, and Kelly McNichols Kury in their individual capacities, pursuant to 42 U.S.C. § 1983, *Smith v. Wade*, and C.R.S. § 24-10-118(2)(a), in an amount sufficient to punish their willful, wanton, and malicious abuses of official power and deter future constitutional deprivations.

F. **Costs and Litigation Expenses**: Award Plaintiff all allowable costs, filing fees, and expenses of this litigation pursuant to 42 U.S.C. § 1988 and the ADA.

G. **Other Relief**: Grant such further and additional legal or equitable relief as this Court deems just, proper, and equitable.

## VII. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues and claims so triable pursuant to Federal Rule of Civil Procedure 38(b).

## VIII. VERIFICATION UNDER 28 U.S.C. § 1746

I, Christopher J. Nolan, declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that I am the Plaintiff in the above-captioned civil rights action; that I have read the foregoing Verified Complaint for Civil Rights Violations, Declaratory Judgment, and Equitable Relief; that I know and understand the contents thereof; and that the factual statements and allegations set forth therein are true and correct of my own personal knowledge, except as to matters stated upon information and belief, and as to those matters, I believe them to be true.

Executed this 13th day of November, 2026, at Denver, Colorado.

Respectfully submitted,

**Christopher J. Nolan**, *pro se*
110 Snow Fox Lane
P.O. Box 916
Aspen, Colorado 81612 CJN
Telephone: (203) 979-4555
Email: chris@flywheel.world